**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASA YOHANANOV, | No. 22-cv-05186 (MEF)(SDA) |
| *Plaintiff*, | |
| v. | **OPINION and ORDER** |
| ANTHONY M. ARBORE, et al., | |
| *Defendants*. | |

\* \* \*

For the purpose of this Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

\* \* \*

The case in a nutshell: the Plaintiff[1] had pointed and persistent disagreements with a neighbor; he repeatedly called local police for help in resolving the disagreements; but the Plaintiff was dissatisfied with the responses he received.  See Amended Complaint ("Complaint") (ECF 44) ¶¶ 19-25.

In light of this, the Plaintiff sued.

---

[1]   Asa Yohananov.

Among the defendants he named: a local police officer,[2] a police supervisor,[3] and the police chief;[4] plus the police department[5] and the relevant town.[6] See id. ¶¶ 10-14.

From here, these people and entities are called, collectively, "the Defendants."

The Plaintiff's first claim against the Defendants is under the federal constitution. "[S]pecifically," per the Plaintiff, his right to due process of law was violated. See id. ¶¶ 104-07.

And there is another claim, too --- a New Jersey common law claim for intentional infliction of emotional distress. See id. ¶¶ 108-12.

\*   \*   \*

The Defendants have moved for summary judgment.

Their motion is granted as to the federal due process claim. As to the New Jersey common law claim, the Court will not retain jurisdiction.

\*   \*   \*

Start with the due process claim.

But before getting underway, a note.

The cause of action for the due process claim is supplied by Title 42, United States Code, Section 1983. See Complaint ¶¶ 4, 105. That cause of action comes with some limits on who can be sued under it. See, e.g., Duncan v. City of Paterson, 2025 WL 2612275, at *3-4 (D.N.J. Sept. 10, 2025).

One of those limits: only a "person" can be sued under Section 1983. See generally Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

And a police department typically cannot be chalked up as a Section 1983 "person," so it cannot be sued using Section 1983.

---

[2] Todd Sodano.

[3] Brian Moreland.

[4] Kenneth J. Burke.

[5] Byram Township Police Department.

[6] Byram Township, Sussex County, New Jersey.

2

See, e.g., Webb v. Hillside Mun. Police Dep't, 2025 WL 1899560, at *4 (D.N.J. July 8, 2025).

But the Defendants do not raise this point. They do not argue, as they might have, that suing the police department-Defendant, see footnote 5, is categorically out of bounds here under Section 1983.

Arguments as to whether a given local entity counts as a Section 1983 "person" --- a court does not generally raise those sorts of arguments on its own. See Bolden v. Se. Pa. Transp. Auth., 953 F.2d 807, 821 (3d Cir. 1991); accord, e.g., Paeste v. Government of Guam, 798 F.3d 1228, 1234 (9th Cir. 2015); Barker v. Goodrich, 649 F.3d 428, 433 n.1 (6th Cir. 2011); Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1105 (D.C. Cir. 2005); cf. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89-90 (1998).

Therefore, the Court goes forward here as if the police department-Defendant can be sued using Section 1983 --- even though it likely cannot be.[7]

---

[7] Sua sponte consideration of a Section 1983 "person" issue might sometimes potentially make sense. Think, for example, of a case in which not reaching a threshold "person" issue (because a party has failed to raise it) would require the court to reach a difficult merits claim --- one that can be worked through only by taking up a novel issue of constitutional law. In that circumstance, two core principles would seem to pull in opposite directions. On the one hand, the party-presentation principle, see generally United States v. Sineneng-Smith, 590 U.S. 371, 375-76 (2020), which tells the court not to raise an issue on its own. And on the other hand, the idea that "courts are expected to avoid potentially difficult legal questions when they can," and "all the more so when the legal questions are constitutional." Caduceus, Inc. v. Univ. Physician Grp., 713 F. Supp. 3d 30, 39 (D.N.J. 2024). Should a court take up an easy Section 1983 "person" issue --- on its own, in tension with the party-presentation principle --- to avoid starting down a road that leads to deciding a hard constitutional law question? Or should a court stick with the arguments the parties have made --- even if that means being backed in to resolving a novel constitutional question that could otherwise have been readily side-stepped? Whatever else might be said about these questions, they do not need answering here. This is because

3

\*   \*   \*

Take up now the Defendants' motion for summary judgment as to the Plaintiff's federal due process claim.

to thew The Supreme Court has held that due process has a substantive and a procedural component.  See, e.g., Zinermon v. Burch, 494 U.S. 113, 126 (1990).

On the substantive side of the ledger, due process can sometimes forbid the government from doing certain things.  See, e.g., Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997); Reno v. Flores, 507 U.S. 292, 301-02 (1993).

For example, substantive due process prevents the government from forcing parents to send their children to public school.  See Pierce v. Soc'y of the Sisters, 268 U.S. 510, 534-35 (1925).

The procedural side of due process is focused on a different question.

Namely, as to those things the government is allowed to do, is it doing them in the right way?

The government, for example, is sometimes permitted to take a child away from her parents, as when she is being physically abused by them.  See, e.g., N.J. Stat. Ann. § 30:4C-12.

But if it seeks to go that route, the government must give the parents a fair chance to explain why the accusations against them are wrong.  See, e.g., Tennenbaum v. William, 193 F.3d 581, 593 (2d Cir. 1999); Malik v. Arapahoe Cnty. Dep't of Soc. Servs., 191 F.3d 1306, 1315 (10th Cir. 1999); cf. Stanley v. Illinois, 405 U.S. 645, 656-58 (1972).

\*   \*   \*

The Plaintiff here does not say whether his due process claim is a substantive one or a procedural one.

So take it both ways.

---

resolution of the Plaintiff's claims, as will be seen below, does not require breaking new ground.  It turns on straightforward application of on-point Supreme Court precedent.

4

First, evaluate the Plaintiff's claim as a substantive due process claim.  And then analyze it as a procedural due process claim.

\* \* \*

As noted, this lawsuit is mainly about the Plaintiff's dissatisfaction with the police response to difficulties he was having with his neighbor.  See Complaint ¶¶ 23-25.

There were alleged disputes about the neighbor putting garbage cans on the Plaintiff's driveway.  See id. ¶ 24.  And about trespassing on the Plaintiff's boat.  See id.  And there was back-and-forth about the neighbor removing markers that were supposed to show where a particular property line is.  See id.

Given all this, the Plaintiff contends, local officials should have more thoroughly investigated, and should have in some instances arrested and prosecuted the neighbor.  See id. ¶ 56; Memorandum in Opposition to the Defendants' Motion for Summary Judgment ("Plaintiff's Opposition") (ECF 115) ¶ 53; Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Brief") (ECF 111) ¶¶ 56, 62, 131, 156.

But these failures to act, assuming they were that, cannot be the basis for a substantive due process claim.

To see why, walk through the Supreme Court's decision in DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989).

Suspecting abuse, county officials went to court and got an order to put a child into a kind of protective custody.  See id. at 192.  But the child was soon returned to his father, and the father beat the boy "so severely that he fell into a life-threatening coma."  See id. at 192-93.

The child and his mother then sued a county agency and some of its employees for depriving the child "of his liberty without due process of law, . . . by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known."  Id. at 193.

The Supreme Court rejected the claim.  Substantive due process, the Court held, is "not . . . a guarantee of certain minimal levels of safety and security."  Id. at 195.

5

> It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing [its] power, or employing it as an instrument of oppression. Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.
>
> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. As we said in Harris v. McRae: "Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference . . . , it does not confer an entitlement to such [governmental aid] as may be necessary to realize all the advantages of that freedom." If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.

Id. at 195-97 (cleaned up); see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 755 (2005) (stating that the Court held in DeShaney "that the so-called 'substantive' component of the Due Process Clause does not 'requir[e] the State to protect the life, liberty, and property of its citizens against invasion by private actors.'").[8]

---

[8] DeShaney's conclusion that substantive due process was not violated when government officials "stood by and did nothing when suspicious circumstances dictated a more active role," DeShaney, 489 U.S. at 203, meshes with older Supreme Court decisions. See, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("in American jurisprudence . . . , a private citizen lacks a judicially cognizable interest in the prosecution or

6

The above is all but dispositive.

The Plaintiff's claim here boils down to an argument that the Defendants violated his substantive due process rights because they should have taken certain "affirmative" steps (investigation, arrest, prosecution) to "aid" him in his dispute with his neighbor.

But Deshaney cuts off that claim.

It holds that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary[.]"  DeShaney, 489 U.S. at 197.

                          *    *    *

The Plaintiff's due process claim, as noted just above, cannot work if it is it taken as a substantive due process claim.

What if it is understood as a procedural due process claim?

To begin to answer, start with the law.

For a person to have a potentially viable procedural due process claim, he must first have an interest in the thing that he is being deprived of.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576-78 (1972); Cleveland Bd. of Educ. v.

---

nonprosecution of another"); Leeke v. Timmerman, 454 U.S. 83, 87 (1981) ("A private citizen . . . has no judicially cognizable right to prevent state officials from presenting information, through intervention of the state solicitor, that will assist the magistrate in determining whether to issue the arrest warrant.").  And put aside substantive due process, a kind of constitutional tort.  Ordinary American tort law has tended to land on the same conclusion --- that local officials cannot generally be sued for failing to affirmatively provide police protection, see, e.g., Riss v. City of New York, 22 N.Y.2d 579, 583 (1968), Murrain v. Wilson Lines, Inc., 270 A.D. 372, 377 (N.Y. App. Div. 1946), aff'd, 296 N.Y. 845 (1947), subject to some exceptions that are not relevant here.  (One of the exceptions: tort claims by prisoners for lack of government protection generally sit on a different footing --- when it comes to both constitutional torts, see Farmer v. Brennan, 511 U.S. 825, 834 (1994), and non-constitutional torts.  See, e.g., Breaux v. State, 326 So. 2d 481, 482 (La. 1976); Simmons v. City of Philadelphia, 728 F. Supp. 352, 358-60 (E.D. Pa. 1990).)

Loudermill, 470 U.S. 532, 538 (1985); Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989).

Not every kind of interest works.

To count, an interest must be definitive enough --- hard-edged, and solid.

Indeed, in the typical case, the sort of interest that can open the way to a procedural due process claim is an interest that is protected by law.[9]

Take, for example, a government worker who is fired and believes she did not get a fair shake. She got no heads-up that she was being let go. And she was given no chance to explain why she should not be fired.

Can the government worker potentially press a procedural due process claim?

Yes, if she had a property interest in her job --- the sort of interest that might be created, say, by state civil service laws. See Loudermill, 470 U.S. at 538-39; Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 645-46 (3d Cir. 2024); Thompson v. Del. Dep't of Servs. for Child., Youth & Their Families, 44 F.4th 188, 195 (3d Cir. 2022).

No, if the worker had no property interest in her job --- because, for example, she was working "at-will," and so as a matter of state law had no right to hold onto the job. See Bishop v. Wood, 426 U.S. 341, 344-47 (1976); Metzgar v. Del. Dep't of Nat. Res. & Env't Control, 841 F. App'x 352, 353 (3d Cir. 2020); Specht v. Suarez, 2025 WL 2588675, at *12 (D.N.J. Sept. 5, 2025).

In short: a procedural due process claim can generally get off the ground only if a plaintiff has a sufficiently solid and settled interest in the underlying thing (in the example, a job) that is being impacted by government action (in the example, a firing).

\*   \*   \*

Come back now to this case.

---

[9] And by a body of law that is itself separate from federal due process law. See, e.g., Roth, 408 U.S. at 577; Paul v. Davis, 424 U.S. 693, 709 (1976).

8

As noted above, this lawsuit is about the Plaintiff's contention that local police should have handled differently the dispute he was having with his neighbor.  See Complaint ¶¶ 25, 28, 46, 56, 59, 100.

But to potentially make this work as a procedural due process claim, the Plaintiff must first have had a definitive-enough interest in the police taking the steps he claims that they did not take.

This is a hard argument to make stick.

Police officers are generally given broad discretion.[10]  This means that in a particular situation, there is typically a wide range of permissible options as to how police might choose to act --- and within that range, on-the-spot officers are expected to make the call as to how to handle things.  A loud drunk might be arrested for disturbing the peace.  Or he might just be told to turn it down or to move along.

Given the discretion police generally have, what is the basis for the Plaintiff's argument that local police officers were required to handle his dispute with his neighbor in a particular, prescribed way?

The Plaintiff's answer: his neighbor had assertedly broken five distinct New Jersey criminal laws.  See Plaintiff's Opposition ¶¶ 26-31; Plaintiff's Brief ¶ 134.

And these laws, the argument goes, scramble the usual picture. They pull away the baseline discretion that would otherwise be there, and they compel the police to act in specific ways.  See Plaintiff's Opposition ¶¶ 31-32.

---

[10] See, e.g., Harrington v. County of Suffolk, 607 F.3d 31, 35 (2d Cir. 2010) ("[T]he duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion."); State v. Molinaro, 117 N.J. Super. 276, 291 (Law Div. 1971) ("A policeman is expected and required to exercise a wide and varied discretion in the performance of his duties."); see also City of Chicago v. Morales, 527 U.S. 41, 62 n.32 (1999) (stating that it would "fl[y] in the face of common sense" to prevent the police from "us[ing] some discretion in deciding when and where to enforce city ordinances").

For this argument, the Plaintiff cites first to the New Jersey burglary statute, see Plaintiff's Opposition ¶ 27, which provides that "[a] person is guilty of burglary" when he does certain listed-out things. See N.J. Stat. Ann. 2C:18-2(a) (emphasis added).

And the Plaintiff points to New Jersey's criminal mischief statute, see Plaintiff's Opposition ¶ 28, which similarly provides that "[a] person is guilty of criminal mischief" when he undertakes a certain course of conduct with a particular mental state. See N.J. Stat. Ann. § 2C:17-3(a) (emphasis added).

The three other New Jersey statutes referred to by the Plaintiff, see Plaintiff's Opposition ¶¶ 26, 29; Plaintiff's Brief ¶ 134, use similar "is guilty" language. See N.J. Stat. Ann. § 2C:18-3(a) (criminal trespass); id. § 2C:33-4 (harassment); id. § 2C:33-2 (disorderly conduct).

With all this in mind, step back now to see the Plaintiff's overall procedural due process argument.

It essentially runs like this:

First, when it came to the Plaintiff and his neighbor, the police were legally mandated by the five just-cited New Jersey criminal statutes to act in certain ways. If a person "is" guilty of, say, criminal mischief --- then, the argument seems to go, officials have no choice; the statute compels them to investigate, arrest, and prosecute.

Second, the police Defendants in this case came upon criminal mischief (and other crimes) being committed by the Plaintiff's neighbor, but failed to do what the statutes mandated --- investigate, arrest, prosecute.

And third, the Plaintiff himself had an interest in the police acting in the way they were statutorily obligated to (but allegedly failed to) --- and so the shortfall between how the police were legally mandated to act and how they did act can be the basis for a viable procedural due process claim by the Plaintiff.

But this three-part argument does not hold up.

10

The reason: the ground-floor premise it is built on does not work.[11]

Take that point up just below.

* * *

The key Supreme Court decision here is <u>Town of Castle Rock</u> v. <u>Gonzales</u>.

There, a Colorado court issued a restraining order that limited a husband's interactions with his wife and their three children. <u>Castle Rock</u>, 545 U.S. at 751. The order went out on a form, <u>see id</u>. at 751-52, and the form cited a Colorado law that seemed to pull away from police officers the discretion they usually have. Per the state statute:

> (a) Whenever a restraining order is issued, the protected person shall be provided with a copy of such order. <u>A peace officer shall use every reasonable means to enforce a restraining order.</u>
>
> (b) <u>A peace officer shall arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for</u>

---

[11] There may be difficulties with the other parts of the Plaintiff's argument, too. For example, as a matter of fact, the Defendants emphasize, the police did nothing wrong. <u>See</u> Brief in Support of Byram Defendants' Motion for Summary Judgment ("Defendants' Brief") (ECF 108-1) at 1-2; Brief in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Opposition") (ECF 116) at 1-2. If that is right, it would undermine the second step in the Plaintiff's argument. And another example: the third step in the Plaintiff's argument may not be persuasive. After all, the Supreme Court has suggested that even when the police are legally compelled to act in certain ways, a particular person may not <u>himself</u> always be able to sue based on the gap between how the <u>police</u> were supposed to act and how they did act. <u>See</u> <u>Castle Rock</u>, 545 U.S. at 764-65. (The ordinary <u>non</u>-constitutional tort law of municipal liability often rests on roughly this point, holding that even if local officials have a duty to the general public to act in a certain way, they may not have a duty to any given individual --- and that is part of why an individual cannot generally sue in tort for lack of police protection. <u>See</u> <u>generally</u> <u>Warren</u> v. <u>District of Columbia</u>, 444 A.2d 1, 4 (D.C. 1981); <u>Sebastian</u> v. <u>State</u>, 93 N.Y.2d 790, 793 (1999).)

11

> <u>the arrest of a restrained person</u> when the peace officer has information amounting to probable cause . . . .
>
> (c) In making the probable cause determination . . . a peace officer shall assume that the information received from the registry is accurate. <u>A peace officer shall enforce a valid restraining order whether or not there is a record of the restraining order in the registry.</u>

<u>Id</u>. at 759 (emphasis in original) (quoting Colo. Rev. Stat. § 18-6-803.5(3) (Lexis 1999)).

After the order was served, the wife became concerned. Her then-husband seemed to have disappeared, along with the children. She called the police repeatedly. <u>See id</u>. 753. And she went down to the station. <u>See id</u>. 753-54.

But it did not seem to matter. The police did not meaningfully respond. <u>See id</u>. And her husband murdered their children. <u>See id</u>. 754.

The wife then sued local officials. <u>See id</u>. Her main argument: she had a definitive-enough interest in local law-enforcement taking certain prescribed steps to protect her family --- and because local police did not take those steps, she could sue for a violation of procedural due process. <u>See id</u>. at 751.

After all, the argument went, the parts of Colorado law cited on the restraining-order form seemed to be mandatory. State law seemed to strip away police discretion. It appeared to obligate officers to <u>act</u> --- but they did not.

Did this create a solid-enough entitlement to particular police actions, such that the woman whose children were murdered could then press a procedural due process claim based on the fact that what state law required ("shall use every reasonable means to enforce a restraining order") the police did not do?

The Supreme Court's conclusion: no.

Despite the Colorado statute's repeated use of the word "shall," the Supreme Court noted that "[a] well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes." <u>Id</u>. at 760.

Per the Supreme Court, "a true mandate of police action would require some stronger indication from the Colorado Legislature than 'shall use every reasonable means to enforce a restraining

12

order' (or even 'shall arrest . . . or . . . seek a warrant')." Id. at 761.[12]

The Third Circuit's decision in Coon runs along the same lines.

There, a mother called a county agency to report that her ex-husband was abusing their son. See Coon v. County of Lebanon, 111 F.4th 273, 275 (3d Cir. 2024). The county did not act, and the oy was later found dead, killed by his father. See id.

The state statute at issue seemed to be a command that left no wiggle room: the county agency, per the statute, "'shall ensure the safety of the child'" following a child abuse report. Id. at 276 (quoting 23 Pa. Cons. Stat. § 6368(a)).

But relying on Castle Rock, the Third Circuit held that this language did not pull away agency discretion to the point that the mother had a definitive interest in particular agency actions, such that she could press a procedural due process claim based on the agency not doing what the statute suggested it was required to. See id.

Look also to the Third Circuit's Burrella decision.

There, a Pennsylvania statute provided that law enforcement "'shall arrest a defendant for violating [a protection] order.'" Burella v. City of Philadelphia, 501 F.3d 134, 145 (3d Cir. 2007) (quoting 23 Pa. Cons. Stat. § 6113(a)).

But Castle Rock, as discussed above, held that "shall arrest" was not enough. See id. The Third Circuit therefore concluded that the plaintiff lacked "a cognizable claim that the officers' failure to enforce the orders of protection violated her due process rights." Id. at 146.

These cases control the outcome here.[13]

---

[12] This was consistent with the Supreme Court's earlier decision in City of Chicago v. Morales. There, the Court rejected the notion that an ordinance providing that law enforcement "'shall order'" the dispersal of loitering persons, despite its "mandatory language," should be interpreted to "afford[] the police no discretion." Morales, 527 U.S. at 59, 62 n.32.

[13] And they are not outliers. See, e.g., Harrington, 607 F.3d at 35 (no due process claim based on police inaction, in spite of statute that said "'it shall be the duty'" (quoting Suffolk County, N.Y., Code § C13-6)); Wilborn v. Jones, 761 F. App'x

13

The above cases turned on statutes that seemed to specifically direct the conduct of police, and to leave behind little real elbow room.

Armed with a restraining order, how should a Colorado police officer act?  He "'shall[14] use every reasonable means to enforce [it].'"  Castle Rock, 545 U.S. at 759 (quoting Colo. Rev. Stat. § 18-6-803.5(3)(a)).  If he has "'information amounting to probable cause,'" id. (quoting Colo. Rev. Stat. § 18-6-803.5(3)(b)), a police officer "'shall arrest.'"  Id.  What "'if an arrest would be impractical under the circumstances'"?  Id.  Then he "'shall'" "'seek a warrant for . . . arrest.'"  Id.

These are pointed and detailed directives.

But the Supreme Court held that they did not go far enough.  The statutory language did not definitively compel particular police action to the point that a plaintiff can advance a procedural due process claim based on police inaction.  See id. at 761-62.

And for the Defendants, this case is an easier one than the Supreme Court and Third Circuit cases cited above.

The five New Jersey statutes invoked by the Plaintiff do not purport to direct the actions of police --- to tell officers when to arrest someone and when to seek an arrest warrant.

---

908, 910-11 (11th Cir. 2019) (same, statute said "the law enforcement officer shall" (citing Ala. Code § 22-52-91(a)); Howard v. Bayes, 457 F.3d 568, 575-76 (6th Cir. 2006) (same, statute said "'the officer shall use all reasonable means to prevent further abuse'" (quoting Ky. Rev. Stat. Ann. § 403.785(2))).

[14] See, e.g., Shall, vb., sense 1, Black's Law Dictionary (12th ed. 2024) ("Has a duty to; more broadly, is required to"); Shall, v., sense 3b, Merriam-Webster, https://www.merriam-webster.com/dictionary/shall (last visited, Sept. 26, 2025) ("used in laws, regulations, or directives to express what is mandatory"); see also, e.g., Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587-88 (2013) (The "choice of the word 'shall' . . . is ordinarily intended to be mandatory, not permissive.").

14

And the cited New Jersey statutes are not in the form of a legislative command. They do not say "shall."

Instead, the New Jersey statutes invoked by the Plaintiff simply indicate what makes a person guilty of, say, disorderly conduct.

But as noted, the statutes do not tell police what to do --- let alone what they must do --- when they see evidence that shows someone "is guilty."

This seems to leave police discretion where it was. Not to trim it back, or to channel it.

If direct and prescriptive statutory language (as in Castle Rock) is not direct and prescriptive enough to form the basis for a possible procedural due process claim, then the five New Jersey statutes cited here do not clear the bar either. These statutes do not purport to direct police. And they are not prescriptive.

Put differently:

If the "apparently mandatory" language chosen by the Colorado legislature was not definitive enough in Castle Rock, then there is no reason to think that the much looser statutory language at issue in this case displaces "[t]he deep-rooted" principle "of law-enforcement discretion." Castle Rock, 545 U.S. at 760. With the five statutes cited by the Plaintiff in this case, the New Jersey "legislature said nothing about giving victims a property interest in enforcement," and this Court "cannot read its silence as speech." Coon, 111 F.4th at 276.

\* \* \*

In short: the Supreme Court has held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." Castle Rock, 545 U.S. at 768.

In keeping with this, the Defendants' motion for summary judgment must be granted as to the Plaintiff's due process claim.[15]

---

[15] If law-enforcement officers were to affirmatively induce one person to harm another --- then the officers would be acting, and DeShaney and Castle Rock (which are about police inaction) would not be controlling. See Bright v. Westmoreland County,

15

\* \* \*

A note before concluding.

The Plaintiff argues that the Defendants' summary judgment motion must be denied for an additional reason: because he (the Plaintiff) has made out a potentially viable equal protection claim. See Plaintiff's Opposition ¶¶ 78-92.

---

443 F.3d 276, 281 (3d Cir. 2006) (making roughly this point); Burella, 501 F.3d at 146-48 (similar). The Plaintiff gestures toward an argument along these lines. See Plaintiff's Opposition ¶¶ 61-73; Memorandum in Reply to the Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply") (ECF 121) ¶¶ 44-54. But two points on this. First, there is no factual basis for this argument in the record put before the Court. The Complaint refers to a "responding [p]olice [o]fficer talking with [the Plaintiff's] neighbor, and laughing together with one another, followed by [the] responding [p]olice [o]fficer failing to take any corrective [p]olice [a]ction." See Complaint ¶ 25. But the Plaintiff does not point to any evidence of such laughter, and he has submitted no Rule 56.1 statement. At the summary judgment stage, it is facts that count, not allegations from the complaint. See Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 330 (3d Cir. 2016). In a similar vein, at one point in his legal papers, the Plaintiff refers to a text message in which a police officer "bragged to [the Plaintiff's neighbor] about telling the Plaintiff to 'take a hike.'" Plaintiff's Brief ¶ 19. But same problem. The assertion is made, but without citation to any evidence to back it up. And even if there were evidence, a second problem. Laughter or telling someone to "take a hike" --- these are a long way from the cases cited by the Plaintiff, each of which involved affirmative acts by law-enforcement officers to directly encourage serious wrongdoing. See Plaintiff's Opposition ¶¶ 57, 59-60, 68 (citing Okin v. Village of Cornwall-On-Hudson Police Department, 577 F.3d 415, 429-30 (2d Cir. 2008), in which police told a woman's abusive partner "that he could not 'help it sometimes when he smacks [the victim] around,'" Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993), in which "officers conspired with . . . 'skinheads' to permit the latter to beat up flag burners with relative impunity," and Freeman v. Ferguson, 911 F.2d 52, 54 (8th Cir. 1990), in which the plaintiff's claim stemmed from "an affirmative act by a state actor to interfere with the protective services which would have otherwise been available in the community").

16

But there is no reference to an equal protection claim in the complaint. (Indeed, the complaint notes that the constitutional claim here is "[s]pecifically" a due process claim. Complaint ¶ 105.)

A plaintiff may not "put forward [a] theory for the first time in h[is] opposition brief to the summary judgment motion" where "it makes no appearance in h[is] Complaint." Abdelhak v. Experian Info. Sols., Inc., 2025 WL 2380002, at *2 n.6 (D.N.J. Aug. 15, 2025) (quoting Jones v. Treece, 774 F. App'x 65, 67 (3d Cir. 2019)); see also Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008).

Instead, "'[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint.'" Taylor v. Sanders, 536 F. App'x 200, 203 (3d Cir. 2013).

And this principle applies with special force here, given the Plaintiff's consistent disavowal of any argument that he was discriminated against by the Defendants. See, e.g., Defendants' Motion for Summary Judgment, Exhibit B (ECF 108-5) at 97:1-98:1; Defendants' Motion for Summary Judgment, Exhibit J (ECF 108-13) ¶¶ 18, 20.

In short: the Court puts aside the Plaintiff's equal protection argument without getting to its merits.[16]

\*   \*   \*

Turn away now from the Plaintiff's claim under the federal constitution and look to his second claim --- the one under New Jersey common law, for intentional infliction of emotional distress. See Complaint ¶¶ 108-12.

The Court's jurisdiction over this claim is based on the supplemental jurisdiction statute. See 28 U.S.C. § 1367.

---

[16] And on the merits, the Plaintiff's argument could not be sustained on the record put before the Court. An equal protection claim requires evidence of a similarly situated "comparator" who was treated differently. See Hargrave v. Ramsey, 688 F. App'x 124, 127 (3d Cir. 2017); Jaramillo v. City of Coatesville, 2025 WL 2237362, at *1 (3d Cir. Aug. 6, 2025). But the Plaintiff does not point to "comparator" evidence.

17

With the Defendants' summary judgment motion granted as to the federal claim, the Court's original basis for jurisdiction is gone. Only the state law claim for intentional infliction of emotional distress is left in the case.

The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial," Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000), as here, "the district court must decline to decide the . . . state claim[] unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges, 204 F.3d at 123 (emphasis in original, cleaned up); see also Pinkston v. City of Jersey City, 699 F. Supp. 3d 298, 301 (D.N.J. 2023).

But no party has come forward with an "affirmative justification" for holding on to the state law claim and resolving it here.

And it is hard to know why going that route would make sense.

Take "judicial economy," Hedges, 204 F.3d at 123, for example.

Working through the Plaintiff's intentional infliction of emotional distress claim would seem to necessarily run through a complex causation analysis, focused on a close consideration of the Plaintiff's interactions with his neighbor. See Defendants' Brief at 29-30; Plaintiff's Reply ¶¶ 90-91.

But these are factual inquiries. And they would require something close to starting anew. They do not meaningfully overlap with the work that the Court has done until now on this case --- work that has been mainly focused on legal questions (and ones related to federal constitutional law, not to the state law of intentional infliction of emotional distress).

Moreover, the Plaintiff's state law claim also seems to raise questions as to the immunity available to police officers under a particular New Jersey statute. See Defendants' Brief at 28. Such "[p]olicy-laden state law questions should be taken up by [the] state courts, not this one." Duncan, 2025 WL 2612275, at *19.

Having granted the Defendants' motion for summary judgment as to the "claim[] over which the district court ha[d] original jurisdiction," the federal due process claim, the Court

18

"decline[s] to exercise supplemental jurisdiction over" the Plaintiff's state law claim. <u>See</u> 28 U.S.C. § 1367(c).

* * *

As to the federal claim, the Defendants' motion for summary judgment is granted.

The Court will not retain jurisdiction over the New Jersey claim.

IT IS on this 29th day of September, 2025, **SO ORDERED.**

                                           Michael E. Farbiarz, U.S.D.J.